**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
DANIEL REALE and MIRIAM IRIZARRY, :
                                 :
        Plaintiffs,              :    Civil No. 3:21-cv-1349(AWT)
                                 :
    v.                           :
                                 :
CHRISTI HASKELL, KATHLEEN BARRY, :
ROXANNE BOISEE, PEGGY BOUREY,    :
MICHAEL BROUGHTON, ARRIANA       :
LANDRY, AUDREY LEMIEUX, HEATHER  :
SMITH, DIANE SUMMA, PAUL BRENTON,:
SCOTT SUGARMAN, and PLAINFIELD   :
BOARD OF EDUCATION,              :
                                 :
        Defendants.              :
------------------------------- x
```

## RULING ON MOTION TO DISMISS

The plaintiffs, Daniel Reale and Miriam Irizzary, bring this action against defendants Plainfield Board of Education (the "Board of Education"); Board of Education members Christi Haskell, Kathleen Barry, Roxanne Boisee, Peggy Bourey, Michael Broughton, Arriana Landry, Audrey Lemeiux, Heather Smith, and Diane Summa; Superintendent of Plainfield Public Schools Paul Brenton; and Assistant Superintendent of Plainfield Public Schools Scott Sugarman.

This case arises out of a dispute concerning mask mandate policies adopted by the Board of Education in response to Covid-19, and the Amended Complaint (ECF No. 21) has six counts. Count One is a claim by Reale against Haskell, Sugarman, and the Board

1

of Education for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Count Two is a claim by Reale against Haskell, Sugarman, and the Board of Education pursuant to 42 U.S.C. § 1983 for violation of his rights under the First Amendment. Count Three is a claim by Irizarry against Sugarman and the Board of Education pursuant to 42 U.S.C. § 1983 for violation of her rights under the First Amendment.

Count Four is a claim by the plaintiffs pursuant to 42 U.S.C. § 1983 against the defendants for violation of their rights to equal protection under the Fourteenth Amendment. Count Five is a claim by the plaintiffs pursuant to 42 U.S.C. § 1983 for violation of their rights under the First Amendment. Count Six is a claim by the plaintiffs pursuant to 42 U.S.C. § 1986 against Barry, Boisee, Bourey, Brenton, Broughton, Landry,[1] Lemieux, Smith, and Summa for failure to intercede to prevent the violation of the plaintiffs' First Amendment rights by Sugarman, Haskell, and the Board of Education, who allegedly conspired to deprive the plaintiffs of their First Amendment rights in violation of 42 U.S.C. 1985(3).

The defendants move to dismiss Count Four and Count Six of the Amended Complaint. For the reasons set forth below, the motion to dismiss is being granted.

---

[1] While the caption of the Amended Complaint and the caption to Count Six name defendant Landry, the paragraphs following the caption, ¶¶ 101-108, do not name Landry. The court assumes this is a scrivener's error.

I.    **FACTUAL ALLEGATIONS**

Plaintiff Daniel Reale has "chronic rhino-sinusitis and
associated allergies, which cause substantial to near complete
obstruction of his nasal passages and result in substantially
increased difficulties in breathing." Am. Compl. at ¶ 6. He
alleges that this condition "is a 'disability' for the purposes
of 42 U.S.C. § 12102(a)(1)" because "[i]t impairs the major life
activity of 'breathing' as set forth in 42 U.S.C § 12102(2)(A)
in terms of major life functions and 42 U.S.C. § 12102(2)(B) in
terms of bodily functions." Id. He alleges that the condition
"has resulted in shortness of breath and asthma" throughout his
life. Id.

On September 8, 2021, Reale attended a Board of Education
meeting. He alleges that, at the time he attended the meeting,
he "was regarded as having an impairment for the purposes of 42
U.S.C. § 12102(3)(A) . . . and was exempt from mask wearing
requirements." Id. at ¶ 7. Reale alleges that, at the meeting,
Sugarman "insisted [Reale] wear a mask," and Reale responded,
"I'm exempt." Id. at ¶ 9.  Reale contends that Sugarman then
"insisted" that he sit in the back of the auditorium "in order
to screen out and identify him as protected under the ADA." Id.
Reale then sat in the back of the auditorium.

Reale alleges that he signed up to speak during the public
comment portion of the September Board of Education meeting. He

alleges that Haskell and the Board of Education "demanded that [he] wear a mask." Id. at ¶ 11. Reale responded, "I'm exempt," but Haskell and the Board of Education "ordered the Plaintiff to leave the meeting, which he did." Id. Reale alleges that, prior to leaving, he "asked Defendant Haskell if he could either take the microphone and address the Defendants over 100 feet away from the back of the auditorium, or if he would have to file suit." Id. at ¶ 16. He alleges that Haskell said "'send out the marshal' and in fact openly and notoriously demanded the suit be filed." Id.

Reale alleges that he had attended a prior Board of Education meeting in August 2021. Unlike the September meeting, Reale did not sign up to speak during the public comment portion of the August meeting. Reale alleges that, at the August meeting, the defendants "actively chose to honor his ADA exemption," and "he was not bothered or requested to wear a mask." Id. at ¶ 10. Reale claims that the defendants "selectively enforced Executive Orders by honoring Plaintiff Reale's right to be present in August and then denying it in September when he decided to participate in public comment." Id. at ¶ 14. He claims that the defendants selectively enforced the mask-mandate against him because the defendants "feared the loss of COVID-19 related funding and sought to delay [Reale's] ability to collect signatures for [a] petition" for a town

4

referendum seeking to change Plainfield's Covid-19 policies. Id.
at ¶ 80.

On or about September 1, 2021, plaintiff Miriam Irizarry
"showed up to protest the Defendant's policies forcing mandatory
masking and COVID-19 vaccination in front of the Plainfield
Central School." Id. at ¶ 68. Irizarry contends that she was
protesting on a sidewalk that is "not school grounds and in fact
is a public right away sufficiently far away from students so as
to prevent danger from COVID-19 or anything else." Id. at ¶ 70.
She alleges that Sugarman "commanded the Plaintiff and other
protesters to leave the sidewalk and protest across the street
on privately owned property." Id. Irizarry alleges that Sugarman
"believed that this would result in the Plaintiff being charged
with first degree criminal trespass or some other crime." Id. at
¶ 71. She contends that "[i]n order to effectuate his ends and
that of Defendant Plainfield Board of Education, [Sugarman]
caused Plainfield PD to show up." Id. She alleges that "[t]he
Plaintiff and the other protesters were then given the
instruction to not sing, chant or verbalize any content of
speech, thereby violating even further the Plaintiff's right to
have in fact spoken, sang or chanted if she so desired." Id.

On September 8, 2021, Irizarry "protested the same policies
that Plaintiff Reale wished to speak out against on September 8,
2021 for many of the same, common reasons." Id. at ¶ 72.

The plaintiffs claim to represent a class "consisting of those members of the public who: (a) have a right to attend in person physical meetings and be on public grounds; and (b) disagree with the unlawful policies of the Defendants, for which the Defendants have decided to punish them in the ways complained of herein for participating in public discourse on or about public grounds and in meetings." Id. at ¶ 85. The plaintiffs state that "Reale is in a class defined as those who disagree with the draconian policies of the Defendants and being in a class exempt from having to wear a mask," id. at ¶ 87, and that "Irizarry is in a class shared by Plaintiff Reale in the sense that she has experienced unlawful orders to vacate public property as a consequence of First Amendment protected expression." Id.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly,

550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555  (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his

claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

## III. DISCUSSION

### A. Count Four

In Count Four, the plaintiffs claim that "they were treated unequally under the law and denied equal protection under the laws per the Fourteenth Amendment §1." Am. Compl. at ¶ 78. They allege that the defendants "purposefully conspired as a collective to prevent any dissent from implementing policies that harmed students in a net sense, which both Plaintiffs have repeatedly protested and spoken out against, and were known by the Defendants to have done so." Id. at ¶ 79. With respect to Reale, the plaintiffs claim that the defendants "purposefully conspired to exclude anyone who opposed the public health and civil rights harms caused by COVID-19 related executive orders relative to public schools from being in the same room or speaking to the petition for the town referendum." Id. at ¶ 80. With respect to Irizarry, the plaintiffs claim that the defendants "purposefully conspired to exclude anyone who opposed the public health and civil rights harms caused by COVID-19 related executive orders relative to public schools from being within eyesight or earshot of parents entering school grounds who agreed with the content of the Plaintiffs' freedom of speech." Id. at ¶ 81.

The plaintiffs claim that "[t]his treatment of the Plaintiffs by the Defendants was fundamentally different from that of those who politically agree with the Defendants in that the Plaintiffs have been excluded from public meetings and had their First Amendment rights impermissibly infringed, whereas those who agree with the Defendants are welcomed in person with open arms and encouraged to publicly comment." Id. at ¶ 88. They claim that "[t]here was no compelling government interest in treating the Plaintiffs differently than anyone else." Id. at ¶ 89. They claim such actions deprived them of their rights to equal protection under the Fourteenth Amendment.

The defendants argue that Count Four must be dismissed for two reasons. First, they contend that "[t]he allegations described in Count Four of the plaintiffs' Amended Complaint fail to meet the required plausibility standard to survive a motion to dismiss." Defs.' Mem. L. Supp. Defs.' Mot. Dismiss (ECF No. 30-1) at 7. They argue that the plaintiffs "vaguely claim that the defendants have violated their rights under the Equal Protection Clause by briefly stating that the defendants' actions are a violation in a conclusory manner." Id. at 8. Second, they contend that the plaintiffs "fail to properly allege well-pled facts of comparators similarly situated and treated differently which is essential to survive a motion to dismiss." Id. at 12–13.

Although the plaintiffs assert that they belong to three different classes, see Am. Compl. at ¶¶ 85, 87, their factual allegations do not support a reasonable inference that the plaintiffs are part of a protected class. The plaintiffs state that "Reale is in a class defined as those who disagree with the draconian policies of the Defendants and being in a class exempt from having to wear a mask," id. at ¶ 87, that "Irizarry is in a class shared by Plaintiff Reale in the sense that she has experienced unlawful orders to vacate public property as a consequence of First Amendment protected expression," id., and that both of them "are in a class consisting of those members of the public who: (a) have a right to attend in person physical meetings and be on public grounds; and (b) disagree with the unlawful policies of the Defendants, for which the Defendants have decided to punish them in the ways complained of herein for participating in public discourse on or about public grounds and in meetings." Id. at ¶ 85. None of these classes are protected classes under the Equal Protection Clause of the Fourteenth Amendment. See Stoutenger v. City of Fulton, No. 5:21-CV-00563, 2022 WL 1909918, at *14 (N.D.N.Y. June 2, 2022) ("To state an equal protection claim, a plaintiff must allege that he is a member of a suspect or quasi-suspect class of persons; such classes include, but are not limited to, classes identified by race, gender, alienage, or national origin." (quoting Avent v.

10

Keybank, No. 21-CV-01466 (CM), 2021 WL 1253840, at *3 (S.D.N.Y. Apr. 1, 2021)) (citing Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995); Myers v. Cnty. of Orange, 157 F.3d 66, 75 (2d Cir. 1998))).

"When a plaintiff alleges an equal protection violation (without also alleging discrimination based upon membership in a protected class), the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Plaintiffs can pursue such a claim using either a class-of-one theory or a theory of selective enforcement. "To prevail on a class-of-one claim, Plaintiffs must establish that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Devecchis v. Scalora, 179 F. Supp. 3d 208, 221–22 (D. Conn. 2016) (quoting Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58 (2d Cir. 2010)). "Plaintiffs must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves,' to provide an inference that they were 'intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an

11

improper purpose—whether personal or otherwise—is all but certain.'" Id. at 222 (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). "Similarly, to prevail on a claim of selective enforcement, Plaintiffs must establish that (1) they were treated differently from other similarly situated individuals, and (2) the 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [them].'" Id. (alteration in original) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).

It is unclear whether the plaintiffs are pursuing a class-of-one theory, a selective enforcement theory, or both. However, the court agrees with the defendants that the plaintiffs have failed to plead facts sufficient to survive the motion to dismiss with respect to either theory. As the defendants point out, "the key element that is missing from the Plaintiffs' Amended Complaint is the identification of any comparators that were treated differently." Defs.' Reply Pls.' Opp. Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 32, at 3. The plaintiffs fail to allege facts sufficient to support a reasonable inference that they were "intentionally treated differently from others similarly situated." Progressive Credit Union, 889 F.3d at 49. The plaintiffs state that the defendants' treatment of them "was

fundamentally different from that of those who politically agree with the Defendants." Am. Compl. at ¶ 88. But there are no factual allegations describing how the defendants treated similarly situated individuals who agreed with the defendants' Covid-19 related policies. Rather, the plaintiffs merely assert in a conclusory fashion that the defendants "welcome with open arms anyone who agrees with their policies and invite the same to speak in person at meetings, and do not take measures to exclude them from public meetings." Id. at ¶ 85.

To the extent the plaintiffs arguably identify a similarly situated comparator the defendants intentionally treated differently, it is Reale and the defendants' treatment of Reale at the August 2021 Board of Education meeting. But even if the court were to accept this theory of differential treatment, accepting all facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Amended Complaint still fails to plead facts sufficient to "provide an inference that the difference in treatment lack[s] any reasonable nexus with a legitimate governmental policy." Progressive Credit Union, 889 F.3d at 49 (alteration in original) (quotations omitted). The plaintiffs allege that the defendants treated Reale differently at the September Board of Education meeting than they treated him at the August Board of Education meeting because at the September meeting he was

13

garnering support for a petition the defendants opposed and he signed up for public comment. But the Amended Complaint makes it clear that the defendants ordered Reale to leave only after demanding that he wear a mask and asking him for documentation with respect to his medical condition. Am. Compl. at ¶¶ 11, 12. Such conduct has a "reasonable nexus with a legitimate governmental policy," Progressive Credit Union, 889 F.3d at 49 (quotations omitted), namely enforcing a mask mandate from which certain people are exempt for medical reasons. Cf. Doe v. Franklin Square Union Free Sch. Dist., No. 2:21-5012-FB-SIL, 2021 WL 4957893, at *19 (E.D.N.Y. Oct. 26, 2021) (noting that there is "a significant body of post-pandemic caselaw upholding vaccination mandates based upon rational basis review analysis.").

Therefore, Count IV is being dismissed for failure to state a claim.

## B. **Count Six**

Count Six is a claim pursuant to 42 U.S.C. § 1986. The plaintiffs claim that Sugarman, Haskell, and the Board of Education conspired "to quell First Amendment protected expressions condemning policies that harm and continue to harm children and their educational outcomes," Am. Compl. at ¶ 104, and Barry, Boisee, Bourey, Landry, Lemeiux, Smith, Broughton, Summa, and Brenton violated 42 U.S.C. § 1986 because they

"failed to intercede to prevent the acts complained of, and had actual and constructive notice of the same as ongoing policy, policy that, if need be, would be commanded to be enforced by physical force[.]" Id. at ¶ 102.

The defendants contend that the plaintiffs fail to state a claim upon which relief can be granted. They argue that "[i]n order for a plaintiff to properly plead a claim under § 1986, they must sufficiently plead a claim under § 1985 as a § 1986 claim is derivative thereof" and the plaintiffs have not alleged facts that state a § 1985(3) claim. Defs.' Mem. L. Supp. Defs.' Mot. Dismiss, at 14.

The defendants contend that the plaintiffs have failed to adequately plead a 1985(3) claim in at least two ways. First, they argue that the plaintiffs "fail to allege that they were deprived of equal protection under the law or equal privileges and immunities on the basis of their race or some other class-based basis." Id. at 15.[2] Second, they argue that "even if the Plaintiffs are a part of a protected class, . . . [t]he paragraphs that the Plaintiffs cite to do not consist of facts

---

[2] In some portions of their memorandum, the defendants appear to argue that § 1985(3) applies only to conspiracies motivated by racial animus. See Mem. L. Supp. Defs.' Mot. Dismiss, at 14 ("[W]ithout allegations of racial discriminatory animus, a complaint will fail to state a claim under § 1985. Simply put, § 1985(3) does not apply to all alleged conspiratorial interferences with the rights of others, but only those motivated by a racial animus." (citing Bisbee v. Bev, 39 F.3d 1096, 1102 (10th Cir. 1994); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)). However, as the plaintiffs point out, "Section 1985(3) covers classes beyond race." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015).

from which a conspiratorial agreement could be inferred." Defs.'
Reply at 7-8. They argue, in the alternative, that even if the
plaintiffs have adequately pled a § 1985(3) claim, the
plaintiffs "have not sufficiently pled a plausibility based on
these facts alone that the Defendants had actual knowledge that
a conspiracy was taking place." Defs.' Reply at 6.

The plaintiffs assert that they "are among a class of
people who politically disagree with what the Defendants have
done for their own political ends and for institutionally driven
financial objectives." Mem. Opp. Mot. Dismiss, at 18, ECF No.
31. They state that "[t]he conspiracy is set forth in ¶¶ 82, 83,
84 and 106" of the Amended Complaint; that "[t]he first element
is satisfied by the allegations in ¶¶ 16, 17, 18, 19, 22, 29,
30, 36, 39, 42 and 44"; that "[t]he acts in the second, for
illustrative examples, are set forth in ¶¶ 62, 47, 48 and 53";
and that "[t]he animus is clear from ¶¶ 15, 24, 25, 45, 46, 49,
50, 51, 52, 56 and 60." Id. at 19.

"[A] § 1986 claim must be predicated upon a valid § 1985
claim." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d
1085, 1088 (2d Cir. 1993). Failure to allege facts that support
a § 1985(3) cause of action warrant dismissal of a § 1986 claim.
See, e.g., Strujan v. Off. of New York State Governor, No.
17CV1566RRMSMG, 2020 WL 2542126, at *3 (E.D.N.Y. May 19, 2020)
("As plaintiff has neither explicitly asserted a claim under §

16

1985 nor alleged facts that would support a § 1985 cause of action, his § 1986 claim is dismissed").

"The elements of a claim under § 1985(3) are: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States.'" Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000) (quoting Mian, 7 F.3d at 1087).

"In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (citations and quotations omitted). See also Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004) ("Indeed, Palmieri failed either to allege an agreement or to aver any factual details concerning the inception or operation of the claimed conspiracy."). Furthermore, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (quotations omitted).

The court agrees with the defendants that the plaintiffs
have failed to state a § 1986 claim because the plaintiffs have
failed to set forth facts sufficient to support a reasonable
inference that Haskell, Sugarman, and the Board of Education
conspired to deprive the plaintiffs of the equal protection of
the laws. Paragraph 17 of the Amended Complaint alleges that the
defendants "as a matter of policy" denied the plaintiff and
others similarly situated the "full and equal enjoyment" of
certain things, and paragraph 18 alleges that as a result of
"improper and illegal policy and/or inadequate or incorrect
training," the defendants subjected the plaintiff and others
similarly situated to certain consequences. Paragraphs 19, 22,
39, and 42 are substantially the same. Paragraph 44 alleges that
the defendants had a policy of excluding "every disabled person
who was exempt from the mask mandates." Am. Compl. at ¶ 44.

Paragraphs 47 and 48 allege that the Board of Education
"only allowed . . . people to speak in favor of continuing
enforcement of masks and mandatory COVID-19 vaccines, and
adhered to their normal policy of not interacting with the
public during public comment," but the Board of Education
"[substantially] deviated from its policy of not interacting
with the public in order to shame and humiliate the Plaintiff."
Id. at ¶¶ 47, 48. Paragraph 53 alleges that the defendants
decided that masks and vaccines should be mandatory. Paragraph

62 alleges that the defendants did not want to learn about a particular court decision.

Paragraph 30 alleges that Reale signed up to speak during the public comment portion of the Board of Education meeting on September 8, 2021, but the defendants did not want him to speak. Paragraphs 16 and 36 allege that during the Board of Education meeting on September 8, 2021, in response to a statement by Reale that he might have to file suit, Haskell said "send out the marshal." Paragraph 29 alleges that during that same Board of Education meeting Sugarman insisted the plaintiff wear a mask and that when the plaintiff told Sugarman that he was exempt Sugarman insisted that he sit in the back of the auditorium.

None of these factual allegations provide details concerning the inception or operation of the claimed conspiracy. As to Haskell and Sugarman, they simply relate to their verbal exchanges with Reale; as to the Board of Education, the factual allegations relate only to policies of the Board; and otherwise the factual allegations are conclusory allegations as to the defendants as a group.

Nor does the Amended Complaint contain factual allegations that suggest that any conspiracy was motivated by some racial or otherwise class-based, invidious discriminatory animus. While the Amended Complaint alleges that the defendants "operate policies, customs and practices such that they select, screen

out and discriminate against the Plaintiff and others similarly situated that are protected by the Americans with Disabilities Act," id. at ¶ 14, the plaintiffs allege that "the Defendants' primary motivation for imposing the mandates [was] . . . to solicit and obtain unprecedented amounts of state and federal money for COVID-19 enforcement regardless of the public health costs and damage the same have done to children in the Plainfield School System." Id. at ¶ 15.

Therefore, Count VI is being dismissed for failure to state a claim.[3]

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 30) is hereby GRANTED. Count IV and Count VI are dismissed.

It is so ordered.

Dated this 5th day of August 2022, at Hartford, Connecticut.

---

[3] The plaintiffs also fail to allege facts that could establish a § 1985(3) conspiracy among Sugarman, Haskell and the Board of Education because under the intracorporate conspiracy doctrine "there is no conspiracy [under 42 U.S.C. § 1985(3)] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978). "While, '[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity,'" K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013) (quoting Quinn v. Nassau Cnty. Police Dep't, 53 F.Supp.2d 347, 360 (E.D.N.Y. 1999)), the Amended Complaint does not allege facts that could support a conclusion that any of these three defendants were pursuing their personal interests.

_____
/s/ AWT
Alvin W. Thompson
United States District Judge
